TOWNSEND AND TOWNSEND AND CREW LLP
SUSAN M. SPAETH (State Bar No. 142652)
379 Lytton Avenue
Palo Alto, CA  94301
Telephone:  (650) 326-2400
Facsimile:  (650) 326-2422
Email: smspaeth@townsend.com

Attorneys for Respondent
TENAXIS MEDICAL, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYOLIFE, INC.,<br><br>         Petitioner,<br><br>     v.<br><br>TENAXIS MEDICAL, INC.,<br><br>         Respondent. | Case No. C08-05124 HRL<br><br>**TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782**<br><br>Date:         January 13, 2009<br>Time:        10:00 a.m.<br>Courtroom:  2<br><br>Honorable Howard R. Lloyd |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 1

III. ARGUMENT ........................................................................................................................ 4

    A. Tenaxis' Party Status in the German Action Counsels Against Compelling Discovery ............................................................................................ 4

    B. The German Court Does Not Need this Court's Assistance ............................................ 5

    C. CryoLife's Discovery Request would Circumvent German Proof-Gathering Restrictions ................................................................................................. 5

        1. CryoLife already has Tenaxis documents regarding the composition of ArterX; any additional information is unnecessary to the claims at issue ................................................................................................. 7

        2. Compelling production of highly sensitive sales and marketing documents prior to a finding of infringement would circumvent German proof-gathering restrictions ................................................... 8

        3. CryoLife cites no compelling need for samples of Tenaxis' commercial product ............................................................................................. 9

        4. CryoLife's deposition request should be denied for the same reasons its document requests should be denied ............................................ 9

    D. CryoLife's Petition is Unduly Intrusive ........................................................................... 9

IV. CONCLUSION .................................................................................................................. 11

TOWNSEND
and
TOWNSEND
and
CREW
LLP

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- i -

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   2004 WL 2282320 (N.D. Cal. 2004) ........................................................................... 1, 4

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*,
   848 F.2d 1151 (11th Cir. 1988) ......................................................................................... 8

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ......................................................................................... 1, 4, 5, 6, 9

**Statutes**

28 U.S.C. § 1782 .................................................................................................. 1, 2, 3, 4, 5, 6, 11

## I. INTRODUCTION

Prior to even serving Tenaxis Medical, Inc. ("Tenaxis") with the patent infringement action it commenced against Tenaxis in Germany[1], CryoLife, Inc. ("CryoLife") is asking this Court to order Tenaxis to produce documents and information purportedly for use in the German case. The documents and information CryoLife seeks, however, are (i) already in CryoLife's possession, (ii) readily available to CryoLife in the German Action, if necessary and relevant, or (iii) irrelevant to the German Action. The only rational deduction from these facts is that CryoLife is improperly using 28 U.S.C. § 1782 to attempt to obtain additional information (not necessary in Germany) to use against Tenaxis in a contemplated U.S. action. This Court should reject such an attempt to misuse this Court and the U.S. discovery process.

While CryoLife is correct that this Court has the authority to compel discovery in this matter, the Supreme Court in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) emphasized that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Indeed, on remand, Judge Ware denied AMD's discovery request in that case for reasons that compel a denial of CryoLife's Petition here. *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320 (N.D. Cal. 2004). When the *Intel v. AMD* factors are properly interpreted and applied, there is no valid support to grant CryoLife's Petition for Discovery Under 28 U.S.C. § 1782 ("Petition"). For these reasons, and those more fully set forth below, Tenaxis respectfully requests that this Court DENY CryoLife's Petition.

## II. BACKGROUND

Tenaxis manufactures high-performance surgical sealants, including ArterX Vascular Sealant, a product used to seal suture and staple holes in blood vessels after certain medical procedures. Tenaxis has received regulatory approval to market its ArterX Vascular Sealant products in Germany and is currently seeking regulatory approval to market ArterX Vascular Sealant products in the U.S.

---

[1] According to Exhibits E1 and E2 to CryoLife's Petition, CryoLife filed a patent infringement lawsuit against Tenaxis in the Düsseldorf Regional Court on October 30, 2008, alleging that Tenaxis is infringing CryoLife's European Patent EP 0 650 512 in Germany (the "German Action"). Tenaxis has yet to be served with the German Action, and is aware of it only because of the exhibits to the instant Petition.

TOWNSEND
and
TOWNSEND
and
CREW
LLP

CyroLife has asserted related German (corresponding to European Patent EP 0 650 512) and U.S. (U.S. Patent Number 5,385,606) patents against Tenaxis. EP 0 650 512 and U.S. Pat. No. 5,385,606 both stem from the same original application. In Germany, CryoLife has filed a patent infringement suit relating to EP 0 650 512. Although CryoLife has not yet asserted U.S. Pat. No. 5,385,606 against Tenaxis in Court (to the best of Tenaxis' knowledge), it has done so in correspondence. Declaration of Susan M. Spaeth in Support of Tenaxis Medical, Inc.'s Opposition to CryoLife, Inc.'s Petition for Discovery Under 28 U.S.C. § 1782 ("Spaeth Decl."), Exhibit 1. Tenaxis denies that it infringes any valid claim of either of these patents. More importantly for the purposes of this discovery matter, CryoLife's own papers establish that it does not need this Court to compel the production of any of the requested documents and information to adequately adjudicate the German Action. Thus, the only plausible reason for CryoLife to ask this Court to order production of the requested documents and information is to assess the viability of an infringement action on CryoLife's U.S. patent. Such back-door behavior flies in the face of U.S. civil procedure and should not be condoned here.

The documents and information CryoLife seeks are of the most confidential and commercially sensitive nature:

- "Documents sufficient to show starting materials used in the manufacture of, and the final composition of, ArterX Vascular Sealant sold in, made in, shipped to, imported in, offered for sale in, or used in Germany." Petition, Document Request A.
- "Documents concerning sales and marketing-related activities of Tenaxis regarding the German ArterX product." Petition, Document Request B.

In addition, CyroLife unnecessarily seeks:

- "A sample of each package size or type of the German ArterX product (including product packaging, accompanying applicator, and any accompanying papers or inserts." Petition, Document Request C).

CryoLife also seeks to take the deposition of one or more Tenaxis witnesses regarding the same subject matters on which it seeks documents and information.

TOWNSEND and TOWNSEND and CREW LLP

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL                                                         - 2 -

While CryoLife purports to recognize the confidentiality of the Tenaxis documents and information it seeks, its proposed Protective Order is facially deficient. Moreover, CryoLife neglects to inform this Court that its so-called protective order would be of no effect in Germany, and Tenaxis' confidential documents and information, if introduced into the German Action, would likely become publicly available as the confidentiality of information submitted to a German Court cannot be guaranteed. Because German law does not allow the protection of sensitive documents in the same way the U.S. system does (i.e., by way of protective order, filing under seal, etc.), Germany's proof-gathering mechanisms are – by design – more restrictive than those in the U.S. Compelling production of the requested discovery here would circumvent German proof-gathering restrictions and upset the carefully crafted balance of interests provided by German law.

In addition, although CryoLife asserts to this Court that it needs the requested documents to adjudicate the German Action, the Declaration of Guntram Rahn filed in support of CryoLife's Petition (the "Rahn Declaration" or "Rahn Decl.") belies CryoLife's argument. Nowhere does Dr. Rahn state that the requested discovery is *needed* to adjudicate the German Action, or that CryoLife does not already possess or would not be able to obtain the information it needs to adjudicate its German case through the German courts. *See* Rahn Decl., ¶¶ 3-9. To the contrary, in its Complaint in the German Action, CryoLife specifically seeks an order for Tenaxis to produce the very type of sales and marketing information it is asking this Court to compel in Document Request B. *See* CryoLife Petition, Exh. E2 (English translation of German Complaint) at 3-5. Similarly, CryoLife's German Complaint relies on Tenaxis' information already in CryoLife's possession with respect to the composition of Tenaxis' ArterX Vascular Sealant product (Document Request A). *Id.* at 15-16. Notably, Dr. Rahn admits that German counsel is "informed" by CryoLife's *U.S. counsel* "that CryoLife seeks to conduct discovery of Tenaxis." Rahn Decl., ¶ 3. Of course, it would be completely improper to use § 1782(a) to seek discovery *not* for use in a foreign action (where, as here, the information sought is not necessary), but as a fishing expedition for a contemplated action in the United States.

///

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- 3 -

## III.     ARGUMENT

In *Intel v. AMD*, the Supreme Court enunciated four factors for District Courts to consider in ruling on § 1782 requests. All pertinent factors weigh against granting the Petition in this case.

### A.     Tenaxis' Party Status in the German Action Counsels Against Compelling Discovery

"First, when the person from whom discovery is sought is a participant in the foreign proceeding (as [Tenaxis] is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel* at 264. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* If a party does not produce the requested information, it will suffer the consequences of not submitting appropriate evidence to the foreign court.

Discounting the fact that Tenaxis is a party to the German Action (and thus the need for U.S. intervention is "not as apparent"), CryoLife argues this first factor weighs in favor of compelling discovery because "the German court *cannot* order discovery from Tenaxis." Opening Memorandum of Points and Authorities in Support of CryoLife's Petition for Discovery ("MPA") at 6:4 (emphasis in original). CryoLife is wrong. Contrary to CryoLife's suggestion, the German Court has the authority to request relevant documents from a party such as Tenaxis, and German law provides that the German Court may draw a negative inference against a party who declines to produce requested documents. *See* Declaration of Dr. Ina vom Feld in Support of Tenaxis Medical, Inc.'s Opposition to CryoLife, Inc.'s Petition for Discovery Under 28 U.S.C. § 1782 (the "vom Feld Declaration" or "vom Feld Decl."), ¶ 14. In addition, CryoLife's argument is belied by its own Complaint in the German Action, in which CryoLife itself asks the German Court to order Tenaxis to produce information. *See* Exh. E2 to CryoLife's Petition (English translation of German Complaint) at 3-5.

When the *Intel* case was remanded, Judge Ware held that party status was "*significant* because the [foreign court] has jurisdiction over [the party from whom discovery is sought], and therefore could simply ask [that party] to produce any or all of the discovery [the party seeking the discovery] now seeks." *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320 at *2

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- 4 -

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

1  (emphasis added).  Here, because Tenaxis is a party to the underlying German Action, and because
2  the German Court can order Tenaxis to produce documents or suffer the consequences, the first
3  factor weighs strongly against compelling discovery.

### B.   The German Court Does Not Need this Court's Assistance

The second *Intel* factor directs that "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel* at 264.  Here, CryoLife chose to file its patent infringement action in one of the most respected and authoritative courts for patent litigation in Europe, the Düsseldorf Regional Court.  *See* vom Feld Decl., ¶ 20.  The Düsseldorf Regional Court is well-situated to adjudicate the underlying patent infringement case, as hundreds of patent infringement actions are filed with the Düsseldorf Regional Court each year – nearly 500 cases in the first ten months of 2008.  *Id.*  It is one of the most popular patent infringement forums in Europe and is very able to adjudicate patent cases based on German law and procedures and without involvement of foreign discovery.  *Id.*  Thus, the nature of the foreign tribunal – the Düsseldorf Regional Court – and the character of the proceedings – a standard patent infringement case – weigh strongly against compelling discovery here.

As to the German Court's receptivity, Germany has made a reservation to Article 23 of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters of March 18, 1970 (the "Hague Convention"), taking the position that German courts will not conduct discovery at the request of foreign courts.  *See* vom Feld Decl., ¶ 19.  Moreover, if the German Court had any need of or interest in this Court's assistance, it could ask for it directly.  *Id.*, ¶ 13.

### C.   CryoLife's Discovery Request would Circumvent German Proof-Gathering Restrictions

Like the first and second *Intel* factors, the third factor also weighs heavily against compelling discovery.  As set forth by the Supreme Court "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- 5 -

other policies of a foreign country or the United States." *Intel* at 264-65.  It appears that CryoLife's Petition is either a veiled attempt to circumvent German proof-gathering restrictions and policies or an attempt to use the German Action as an excuse to conduct improper discovery in anticipation of an action in the United States.

While CryoLife asserts on this point (which it conflates with the second factor) that this Court should compel discovery here because "CryoLife Will Be Able to Use the Requested Discovery in German Proceeding," Opening MPA at 6:7-8, CryoLife's argument is both misleading and misses the point of the third *Intel* factor.  While the Rahn Declaration does state that CryoLife would be able to *introduce* the requested discovery in the German Action by way of an offer of proof (Rahn Decl., ¶¶ 7-8), it is deafeningly silent on the need for the requested documents and information in the German Action.  Indeed, Dr. Rahn makes the stunning admission that it is not German counsel that seeks the information, but rather CryoLife's U.S. counsel.  Rahn Decl., ¶ 3.

In any event, neither the language of § 1782 nor the *Intel* decision directs this Court to consider a party's ability to use the requested discovery in a foreign proceeding.  Rather, the import of the inquiry here is whether compelling discovery would offend notions of comity.  In this instance, it would.

As explained in the vom Feld Declaration, German law does not provide the same access to information as may be available under U.S. law because the respective procedural systems weigh the competing factors of permissive discovery and protection of sensitive documents and information differently.  Whereas the United States allows broad discovery and employs mechanisms to preserve confidentiality – for example, by protective order, filing under seal, etc. – the German system strikes a different balance.  Under German law, information introduced into a German court proceeding is likely to become publicly available since the confidentiality of information submitted to the German Court cannot be guaranteed.  vom Feld Decl., ¶¶ 15-18.  Thus, to protect a party's legitimate confidentiality interests, the German system imposes greater restrictions than does U.S. law with regard to both the extent to which parties can be compelled to provide evidence and the timing of producing such evidence. *Id.*

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- 6 -

This carefully crafted balance between confidentiality and discovery in the German courts has not hindered a fair and adequate forum for resolving disputes. Indeed, and as noted above, hundreds of patent infringement actions are filed each year in the Düsseldorf Regional Court (making it probably the most popular patent infringement forum in Europe). *See* vom Feld Decl., ¶ 20. These actions are generally resolved on the basis of the instruments available under German Civil Procedure alone, and without involvement of foreign discovery, even in the multitude of cases where the defendant is domiciled in the U.S. *Id.* With this experience, the Düsseldorf Regional Court does not appear to require discovery from a U.S. court to properly adjudicate the claims before it. Particularly in this instance, where CryoLife is seeking extremely sensitive business documents from a party to the German Action, and where CryoLife has not shown that the documents and information sought are necessary for the adjudication of the German case.

**1. CryoLife already has Tenaxis documents regarding the composition of ArterX; any additional information is unnecessary to the claims at issue**

In its first discovery request (Document Request A in the Petition), CryoLife seeks "Documents sufficient to show starting materials used in the manufacture of, and the final composition of, ArterX Vascular Sealant sold in, made in, shipped to, imported in, offered for sale in, or used in Germany." None of the claims at issue in the German Action (European Patent EP 0 650 512 B1, claims 1, 11, 14 and 21) – or any other claim in EP 0 650 512 – covers any aspects of the "starting materials" used in the manufacture of ArterX Vascular Sealant. *See* CryoLife's Exhibit C attached to Opening MPA, EP 0650 512 B1, claims 1, 11, 14 and 21 and vom Feld Decl., ¶ 6. Nor do any of the claims cover a process of manufacturing a particular type of adhesive. *Id.* Thus, CryoLife's request for Tenaxis to provide CryoLife with highly confidential information regarding the starting materials Tenaxis uses to manufacture ArterX Vascular Sealant is unnecessary, overbroad, and evidence of CryoLife's fishing expedition.

While EP 0 650 512 does concern a "composition comprising . . . a plasma protein or a globular protein and di- or polyfunctional aldehyde . . ." (Exh. C, EP 0 650 512, claim 1), in its German Action, CryoLife asserts infringement of its (compositional) claims based on Tenaxis documents already in its possession . According to its statements in its German Complaint, and in

compliance with a requirement of German Procedural Law that a plaintiff substantiates the facts on which its infringement allegations are based, CryoLife states it does not need further information from Tenaxis to substantiate its German allegations. vom Feld Decl., ¶ 11. Thus, it is unclear why CryoLife would need any further documents from Tenaxis on this point, and there is no valid reason for this Court to compel production.

### 2. Compelling production of highly sensitive sales and marketing documents prior to a finding of infringement would circumvent German proof-gathering restrictions

CryoLife's second document request (Document Request B) seeks "Documents concerning sales and marketing-related activities of Tenaxis regarding the German ArterX product." In addition to being unduly broad, this category of highly sensitive commercial documents will be available to CryoLife in the German proceeding *only if CryoLife can establish its infringement claim*. In its German Complaint, CryoLife already seeks a court order compelling the production of a vast array of sales and marketing information, including the documents and information CryoLife seeks here. See CryoLife Petition, Exh. E2 (English translation of German Complaint) at 3-4. Recognizing the sensitivity of such sales and marketing information, German law provides that a plaintiff is not entitled to such documents unless and until it first establishes that the defendant has infringed one or more claims at issue, as such documents are relevant only to the damages portion of an infringement action, not to prove an underlying infringement.[2] *See* vom Feld Decl., ¶¶ 7-8. CryoLife provides no valid reason for this Court to order the production of such sensitive business documents now, and an order compelling production of such documents would circumvent German proof-gathering restrictions.[3]

---

[2] This aspect of German procedural law is similar to U.S. law in a bifurcated action.

[3] While *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1155 (11th Cir. 1988) states "the determination to grant assistance turns not on whether the proceeding is pending but on whether the requested evidence will likely be of use in a judicial proceeding" and affirmed an order for discovery from a *non-party* in a *criminal* investigation, the scenario is very different here. Here, the German Court has particular procedures wherein the specific and limited disclosure of highly confidential financial, sales and marketing information is ordered only AFTER the patentee has actually proved infringement. *See* vom Feld Decl., ¶ 8. This balances the more narrow scope and delayed timing of disclosing certain highly confidential information against the public availability of disclosed information in Germany. German law specifies a different balance of scope, timing and public availability than U.S. law and should be taken into account when a party hopes to upset that balance by picking and choosing which procedures it likes best under two jurisdictions as CryoLife attempts here.

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL - 8 -

### 3. CryoLife cites no compelling need for samples of Tenaxis' commercial product

In its third document request (Document Request C), CryoLife asks for "A sample of each package size or type of the German ArterX product (including product packaging, accompanying applicator, and any accompanying papers or inserts." Tellingly, while CryoLife makes the conclusory assertion that information regarding the composition of ArterX and Tenaxis' marketing information are relevant to its German claims, its papers are silent on CryoLife's need for ArterX samples. *See* Opening MPA at 3:9-12. Absent a compelling need for Tenaxis to turn over its commercial product to competitor CryoLife, this Court should deny CryoLife's request. If it is needed and proper for CryoLife to obtain in the German Action, CryoLife can purchase one of Tenaxis' products in Germany or the German Court will order its production.

### 4. CryoLife's deposition request should be denied for the same reasons its document requests should be denied

In addition to seeking documents from Tenaxis, CryoLife asks this Court to compel Tenaxis to produce one or more witnesses to testify at a deposition regarding the same matters on which it seeks documents. However, deposition testimony is not regularly permitted or found necessary in Germany. *See* vom Feld Decl., ¶ 13. As discussed above, the Düsseldorf Regional Court is well-suited to adjudicate a patent infringement case under its own procedures and substantive laws, and this Court should not condone CyroLife's attempts to mix and match such procedures and laws on its whim. This Court should deny CryoLife's deposition request for the same reasons it should deny the document requests.

### D. CryoLife's Petition is Unduly Intrusive

Finally, the *Intel* Court directed that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel* at 265.

CryoLife argues that because its discovery requests are "narrow" and tailored, they are not intrusive or burdensome. Again, CryoLife is wrong. As an initial matter, there is nothing narrow or tailored about a request for "documents concerning sales and marketing-related activities of Tenaxis regarding the German ArterX product." CryoLife's Document Request B. Furthermore,

TENAXIS MEDICAL, INC.'S OPPOSITION TO CRYOLIFE, INC.'S
PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782
CASE NO. 08-CV-05124-HRL

- 9 -

CryoLife's Petition seeks highly confidential and competitively important documents and testimony relating to the starting materials and final composition of Tenaxis' product and Tenaxis' related sales and marketing activities, none of which it needs to adjudicate its infringement action in Germany. While CryoLife purports to recognize the confidentiality of Tenaxis documents and information, the so-called protective order it suggests cannot operate to protect Tenaxis' highly confidential information from public use in the German Action. *See* vom Feld Decl., ¶ 18.

Facially, CryoLife's Proposed Protective Order is deficient in many ways. First, it fails to seize jurisdiction over the majority of persons who would have access to Tenaxis' confidential information. It would only have the undersigned counsel and designated experts actually sign onto the Protective Order. Thus, it would provide access to CryoLife's main U.S. outside counsel (William Long of the U.S. law firm Sutherland Asbill & Brennan LLP *see* Rahn Decl., ¶ 3 and Spaeth Decl., Exh. 1), CryoLife's European counsel and CryoLife's in-house lawyers and other non-legal personnel without actually seizing jurisdiction over them to enforce the parameters of the Protective Order. Second, it is vague in several respects, including which counsel may maintain a copy of Tenaxis confidential information in perpetuity. Similarly, its destruction confirmation requirement is vague and different for experts (albeit weak) than for all other recipients of Tenaxis' confidential information (no restriction). Third, it seeks to allow even CryoLife's General Counsel access to the information marked under the highest level of confidentiality without any representation that CryoLife's General Counsel is not involved in patent strategy or prosecution work, or other competitive strategies.

Unsurprisingly, the Rahn Declaration is silent as to the suitability or applicability of a Protective Order in Germany. This is probably because, as set forth above and in the vom Feld Declaration, the proposed Protective Order – indeed, any protective order under which documents or information were ordered produced by this Court – would not bind a German Court which would continue to apply the rules of the German procedural law. vom Feld Decl., ¶ 18. Instead, any such documents or information would likely become publicly available once offered in the German Action as the confidentiality of information submitted cannot be guaranteed. *See* vom Feld Decl., ¶¶ 15-18.

## IV. CONCLUSION

For the reasons set forth above, this Court should deny CryoLife's discovery request in its entirety. Compelling discovery would circumvent the German system's carefully considered proof-gathering restrictions and offend notions of comity. Moreover, the information CryoLife seeks is either unnecessary, already in CryoLife's possession, or premature under the German system and its production now – and under such lax precautions – would be unduly prejudicial to Tenaxis. Tenaxis urges this Court to be particularly diligent in its consideration of CryoLife's Petition here to avoid any possibility that § 1782 is being used impermissibly to seek information to support a potential U.S. action.

DATED: December 23, 2008        TOWNSEND AND TOWNSEND AND CREW LLP


By: /S/ Susan M. Spaeth
    Susan M. Spaeth
    Attorneys for Respondent
    TENAXIS MEDICAL, INC.

61719853 v1