*E-FILED 1/13/2009*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRYOLIFE, INC., | No. C08-05124 HRL |
| Petitioner, | **ORDER GRANTING IN PART CRYOLIFE, INC.'S PETITION FOR DISCOVERY** |
| v. | |
| TENAXIS MEDICAL, INC., | |
| Respondent. | **[Re: Docket No. 1]** |

## I. BACKGROUND

Petitioner Cryolife, Inc. ("Cryolife") says that it is the sole assignee of European patent number EP 0 650 512 (the "'512 patent"), which concerns a type of tissue adhesive used in surgery. Respondent Tenaxis Medical, Inc. ("Tenaxis") manufactures ArterX Vascular Sealant, which reportedly is used to seal suture and staple holes in blood vessels after certain medical procedures. Several months ago, Cryolife filed a patent infringement action in the Düsseldorf Regional Court in Germany against Tenaxis, alleging that Tenaxis infringes the '512 patent by offering and selling the ArterX Vascular Sealant there.

Pursuant to 28 U.S.C. § 1782, Cryolife now petitions this court for an order directing Tenaxis to produce documents, as well as one or more persons to testify on Tenaxis' behalf pursuant to Fed.R.Civ.P. 30(b)(6). Specifically, Cryolife seeks:

- "Documents sufficient to show starting materials used in the manufacture of, and the final composition of, ArterX Vascular Sealant sold in, made in, shipped to, imported in, offered for sale in, or used in Germany (hereinafter the "German ArterX product");"

- "Documents concerning sales and marketing-related activities of Tenaxis regarding the German ArterX product;" and

- "A sample of each package size or type of the German ArterX product (including product packaging, accompanying applicator, and any accompanying papers or inserts)."

(Pet. at 1-2). Additionally, Cryolife seeks Tenaxis' deposition testimony on the following matters:

- "The starting materials and final composition of the German ArterX product;"

- "The sales and marketing-related activities of Tenaxis pertaining to the German ArterX product, including place and time of announcements, advertisements, offers for sale, and sales;" and

- "The whereabouts of any German ArterX product."

(Id. at 2).

Tenaxis opposes the petition for discovery. Upon consideration of the moving and responding papers, as well as the arguments of counsel, this court grants Cryolife's petition, with some limitation (as discussed more fully below).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 246-47 (2004). The statute may be invoked where (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." See Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2004).

A district court is not required to grant the application, but instead retains discretion to determine what discovery, if any, should be permitted. Intel, 542 U.S. at 264. In exercising that discretion, the court should consider the following (nonexhaustive) factors:

2

1     (1)      whether "the person from whom discovery is sought is a participant in the
2                    foreign proceeding";
3     (2)      "the nature of the foreign tribunal, the character of the proceedings underway
4                    abroad, and the receptivity of the foreign government or the court or agency
5                    abroad to U.S. federal-court judicial assistance";
6     (3)      whether the discovery request is "an attempt to circumvent foreign proof-
7                    gathering restrictions or other policies of a foreign country or the United States";
8                    and
9     (4)      whether the discovery requested is "unduly intrusive or burdensome."

10 Intel, 542 U.S. at 264-65.

11         A district court's discretion is to be exercised in view of the twin aims of § 1782:
12 providing efficient assistance to participants in international litigation, and encouraging foreign
13 countries by example to provide similar assistance to our courts. See Schmitz, 376 F.3d at 84.
14 There is no requirement that the party seeking discovery establish that the information sought
15 would be discoverable under the governing law in the foreign proceeding or that United States
16 law would allow discovery in an analogous domestic proceeding. See Intel, 542 U.S. at 247,
17 261-63.

### III. DISCUSSION

19         Section 1782 properly has been invoked here. It is undisputed that Tenaxis has its
20 principal place of business in this district. There is also no question that Cryolife is an
21 "interested person" within the meaning of 28 U.S.C. § 1782. See Intel, 542 U.S. at 256 ("No
22 doubt litigants are included among, and may be the most common example of, the 'interested
23 person[s]' who may invoke § 1782; we read § 1782's caption to convey no more."). Although
24 Tenaxis speculates that the instant petition merely is a fishing expedition for a possible patent
25 infringement action in the United States, all of the discovery sought concerns only the German
26 ArterX product and Tenaxis' activities with respect to that product. This court finds no basis to
27 conclude that the requested discovery is for anything other than use in the lawsuit pending
28 there.

3

1    Additionally, having considered the factors identified by the Supreme Court in <u>Intel</u>, this
2    court concludes that the petition should be granted, with some limitation as to the requested
3    sales and marketing documentation and testimony.

4    With respect to the first <u>Intel</u> factor, it is undisputed that respondent is a party to the
5    action in Germany, albeit Tenaxis says that it has not yet been served with process.[1]  In such
6    situations, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when
7    evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign
8    tribunal has jurisdiction over those appearing before it, and can itself order them to produce
9    evidence."  <u>Intel</u>, 542 U.S. at 264.  However, the parties disagree whether the German court
10   actually has the authority to compel Tenaxis to produce the discovery sought.  Petitioner says
11   that the German court cannot compel Tenaxis (a foreign national) to do so.  Cryolife further
12   asserts that the German court can only direct Tenaxis to produce particular documents that are
13   specifically referred to during the course of the proceedings – something which Cryolife says it
14   cannot begin to do without the requested discovery.  Tenaxis contends that there are
15   consequences for parties who fail to obey an order for production by the German court, but
16   nonetheless seems to agree that the German court cannot force Tenaxis to produce documents
17   or provide testimony by compulsory means.  On this issue, the parties have submitted
18   competing declarations from German lawyers.  (<u>See</u> Rahn Decl., ¶¶ 5-6; Rahn Second Decl., ¶¶
19   6-7; vom Feld Decl., ¶¶ 12-14).

20   This court does not believe it is necessary to make findings as to whose expert correctly
21   characterizes German law and procedure.  <u>See</u> <u>Euromepa, S.A. v. R. Esmerian, Inc.</u>, 51 F.3d
22   1095, 1099 (2d Cir. 1995) ("The record reveals that this litigation became a battle-by-affidavit
23   of international legal experts . . . . [W]e do not read the statute to condone speculative forays
24   into legal territories unfamiliar to federal judges."); <u>see also</u> <u>In re Application of</u>
25   <u>Gemeinschafts-Praxis Dr. Med.Schottdorf</u>, No. Civ. M19-88, 2006 WL 3844464 *7 (S.D.N.Y.,

---

[1] The fact that service of process has not yet been completed under the Hague Convention appears to be of no moment here.  Section 1782(a) does not require that the foreign proceeding be imminent or even pending.  All that is necessary is that a dispositive ruling by the foreign tribunal be "within reasonable contemplation."  <u>Intel</u>, 542 U.S. at 259.

4

1  Dec. 29, 2006) ("[T]he Court is not expected to declare a winner in this 'battle-by-affidavit of
2  international legal experts'") (quoting Euromepa, 51 F.3d at 1099)).  Under the circumstances
3  presented, this court finds that this factor does not clearly weigh in favor of either party.

4  The second Intel factor considers the nature of the German court and its receptivity (or
5  not) to the aid sought in this court.  Requests for discovery have been denied where the foreign
6  tribunal expressly states that it does not need or want the information sought.  See, e.g.,
7  Schmitz, 376 F.3d at 84-85 (affirming denial of discovery where the German government
8  expressly objected to the requested discovery); Advanced Micro Devices, Inc. v. Intel Corp.,
9  No. C01-7033, 2004 WL 2282320 *2 (N.D. Cal., Oct. 4, 2004) (denying request for discovery
10  where the European Commission submitted two amicus briefs stating that it did not need and
11  would not consider any of the documents sought).  There is nothing of the kind on the record
12  presented here.  Instead, Tenaxis argues that (a) the German court is highly experienced in
13  patent matters; and (b) if that court really wants the discovery sought by Cryolife, it can ask for
14  this court's assistance directly under the Hague Convention.  Further, respondent points out that
15  Germany has made a reservation under the Hague Convention, taking the position that it will
16  not conduct discovery itself at the request of foreign courts.

17  These arguments fail to convince.  Section 1782 plainly states that discovery orders may
18  issue upon the request of either a foreign tribunal *or* an interested party.  28 U.S.C. § 1782(a).
19  Moreover, as discussed above, one of the twin aims of the statute is to encourage foreign
20  countries by example to provide similar assistance to our courts.  See Intel, 542 U.S. at 252;
21  Schmitz, 376 F.3d at 84.  If the German court decides that it does not need or want the
22  discovery sought, it no doubt has the authority to exclude the material from evidence.  On the
23  record presented, this court finds no basis to conclude that the German court would be
24  unreceptive to the information requested by Cryolife.  The second Intel factor weighs in
25  Cryolife's favor.

26  The third Intel factor requires this court to consider whether the instant petition is "an
27  attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country
28  or the United States."  Intel, 542 U.S. at 265.  Tenaxis argues that the instant petition would

5

undermine Germany's proof-gathering processes which, respondent says, are much more restrictive than they are in the United States. (<u>See</u> vom Feld Decl., ¶¶ 15-18). In other words, Tenaxis says that Cryolife seeks information that probably would not be discoverable in Germany. Further, Tenaxis expresses concern that it may not be able to adequately protect the confidentiality of any documents used in the German action. Cryolife maintains that there are no German procedures prohibiting the discovery sought and that German procedures merely do not provide for it. (<u>See</u> Second Rahn Decl., ¶¶ 17-18). It further contends that the German court can impose confidentiality restrictions before access to documents is permitted. (<u>See</u> Second Rahn Decl., ¶¶ 19-22).

Again this court finds no need to decide which of the parties' German lawyers most accurately summarizes German procedure. As discussed above, there is no requirement under § 1782 that the requested information would be discoverable under German law, and the mere fact that the "discovery is unavailable under foreign law is not a basis for denying its application." <u>In re The Procter & Gamble Co.</u>, 334 F. Supp.2d 1112, 1116 (E.D. Wis. 2004) (citing <u>Intel</u>, 542 U.S. at 259-263). In rejecting a foreign-discoverability requirement under the statute, the Supreme Court explained:

> While comity and parity concerns may be important touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782(a).
> \* \* \* \* \*
> A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to aid from United States federal courts. . . . A foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).

<u>Intel</u>, 542 U.S. at 261-62; <u>see also</u> <u>In re Gemeinschafts-Praxis Dr. Med. Schottdorf</u>, 2006 WL 3844464 at \*7 (concluding that the applicant's attempt to acquire discovery it was unable to obtain in Germany was "not an 'impermissible' use of § 1782 because, in some respects, that is precisely the type of assistance that the statute was designed to afford."). Nor is this court persuaded that Tenaxis' confidentiality concerns (addressed more fully below) demonstrate that

6

1   the discovery sought would undermine Germany's proof-gathering restrictions or other policies.
2   On the record presented, this court finds that the third Intel factor weighs in Cryolife's favor.

3   The fourth and final Intel factor considers whether "unduly intrusive or burdensome
4   requests may be rejected or trimmed." Intel, 542 U.S. at 265. Tenaxis argues that starting
5   materials are irrelevant to the '512 patent claims and further contends that Cryolife has not
6   shown a "compelling need" for discovery in any event. Here, respondent asserts that Cryolife's
7   German complaint asserts claims based on documents already in Cryolife's possession – i.e., a
8   leaflet, trade show poster and press release, as well as information entered in the German
9   DIMDI database, which reportedly contains information about all medical devices registered
10  and available in the German market. (See Pet., Ex. E2). Additionally, Tenaxis asserts that
11  Cryolife can and should be made to purchase German ArterX samples for itself on the market.
12  Further, respondent argues that deposition testimony should not be permitted because
13  depositions ordinarily would not be allowed under German law.

14  The issue here, however, is not what documents Cryolife might have, but what
15  documents and testimony Tenaxis has that bears upon the issues in the German action. See
16  Minatec Finance, S.A.R.L. v. SI Group, Inc., No. 1:08-CV-269, 2008 WL 3884374 *8
17  (N.D.N.Y., Aug. 18, 2008). Moreover, this court agrees that information about starting
18  materials may clarify any issues as to the product's final composition. At any rate, Cryolife is
19  not obliged to establish a "compelling need" for discovery. As discussed above, petitioner need
20  only show that the information will be useful. See Procter & Gamble, 334 F. Supp.2d at 1116.
21  Nor has Tenaxis convincingly demonstrated that any burden in producing the requested
22  documents, testimony or samples will be undue.

23  However, this court finds that some limitation is warranted as to Cryolife's request for
24  documents and testimony concerning Tenaxis' "sales and marketing-related activities" for the
25  German ArterX product. Tenaxis points out that, in its complaint, Cryolife already seeks an
26  order of the German court for the production of a host of sales and marketing data. (See Pet.,
27  Ex. E2 at 3-4). And, there seems to be no serious dispute that, under German procedure, this
28  essentially is damages-related information to which Cryolife would not be entitled unless and

7

1  until the German court finds that there has been infringement.  (See Rahn Second Decl., ¶ 8;
2  vom Feld Decl., ¶¶ 7-8).  Nevertheless, this court agrees that Cryolife makes a reasonable
3  request for any documents sufficient to prevent Tenaxis from contesting that it offers the ArterX
4  product for sale in Germany.  Accordingly, Cryolife's request for "sales and marketing-related
5  activities" shall be limited to marketing brochures and advertisements, if any, sufficient to
6  prevent Tenaxis from contesting that it offers the ArterX product for sale in Germany.
7  Cryolife's request for testimony about "sales and marketing-related activities" will also be so
8  limited.

9  Finally, as for the claimed confidentiality of some of the information sought, Tenaxis
10 argues that any information used in the German action will likely be placed in the public record,
11 leaving Tenaxis without means to adequately protect its confidential data.  (vom Feld Decl., ¶¶
12 16-18).  Cryolife disputes these assertions.  (See Second Rahn Decl., ¶¶ 19-21).  But this court
13 sees no need to belabor the point.  At oral argument, Tenaxis agreed that its concerns would be
14 sufficiently addressed if the parties enter an agreement – enforceable in this court, if not in
15 Germany – that Cryolife will not use in the German action any discovery obtained under § 1782
16 unless it first obtains a ruling from the German court that the material will be kept confidential.
17 See Procter & Gamble, 334 F. Supp.2d at 1117.

18 Having found that Cryolife properly invoked § 1782, and that, on balance the Intel
19 discretionary factors weigh in Cryolife's favor, the instant petition shall be granted with the
20 limitations discussed above.

### IV.  ORDER

22 Based on the foregoing, IT IS ORDERED THAT:

23 1. Cryolife's 28 U.S.C. § 1782 petition for discovery is GRANTED.  However,
24 Cryolife's request for documents about Tenaxis' "sales and marketing-related activities" for the
25 German ArterX product shall be limited to marketing brochures and advertisements, if any,
26 sufficient to prevent Tenaxis from contesting that it offers the ArterX product for sale in
27 Germany.  Cryolife's request for testimony about "sales and marketing-related activities" will
28 also be so limited.

8

2. The parties shall enter into a confidentiality agreement. This court trusts that the parties should be able to reach an agreement on their own. However, if they cannot, either side may seek appropriate relief in this court to resolve any disputes as to the terms of any protective order to be entered here.

3. Tenaxis shall produce its responsive, non-privileged documents within thirty days from the date of this order.

4. The parties should meet-and-confer to agree upon a mutually agreeable date and time for the Fed.R.Civ.P. 30(b)(6) deposition of Tenaxis. However, the deposition shall take place within sixty days of the date of this order.

Dated: January 13, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:08-cv-5124 Notice electronically mailed to:**

Michael Andrew Taitelman mtaitelman@ftllp.com

Susan Marie Spaeth smspaeth@townsend.com, avmorjig@townsend.com

William Franklin Long:  bill.long@sablaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.